UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Case No: 1:20-cv-2475-NYW

DEBORAH LAUFER,
          Plaintiff,
v.

RANDALL J. LOOPER and
CYNTHIA C. LOOPER dba
ELK RUN INN,
          Defendants.

**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION TO STRIKE**

**I.    Introduction**

Plaintiff, is a Florida resident and disabled person within the meaning of the Americans With Disabilities Act, 42 U.S.C. Sections 12181, et seq. ("ADA"). Defendant books rooms for its hotel through an online online reservations service operated through multiple websites. (Hereinafter "websites", "online reservations systems" or "ORS".) The purpose of this ORS is so that Defendant can reach out and market to persons all over the country, including Florida, in their own homes, to solicit their patronage, provide them with information so that they can make a meaningful choice in planning trips, and, in some instances, book a room at the hotel. As such, the Defendant's ORS is required to comply with the requirements of 28 C.F.R. Section 36.302(e)(1)(hereinafter "Regulation"), by identifying and allowing for booking of accessible rooms and providing accurate and sufficient information as to whether all the features at the hotel are accessible. On multiple occasions prior to the filing of this

lawsuit, Plaintiff reviewed the ORS for Defendant's hotel and found that it did not comply with the Regulation. Plaintiff therefore filed the instant action for injunctive relief pursuant to the ADA.

## II.     Defendant's Motion Is Entirely Lacking In Merit

Defendant filed a motion to strike Plaintiff's Notice Of Pendency, arguing that Plaintiff is required to list all other cases in which she is an ADA plaintiff. Notably, Defendant cites no cases I support of this meritless claim. Indeed, the undersigned is unaware of any instances where any court held that a Notice Of Pendency requires an ADA plaintiff to list every other lawsuit they file.

D.C. Colo. LcivR 3.2(b) defines "related cases" as cases "that have common facts and claims".

Although the law is the same, the "facts and claims" are not.

Plaintiff's claims are based on the following: 42 U.S.C. Section 12188(a) provides for injunctive relief to "any person who is being subjected to discrimination on the basis of disability in violation of this subchapter..." 42 U.S.C. Section 12182(a) provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the ... services ... of any place of public accommodation.... 42 U.S.C. Section 12182(b)(2)(A) provides that the definition of "discrimination" includes: "a failure to make reasonable modifications in policies, practices, or procedures ... to afford such ... services ... to individuals with disabilities...."  42 U.S.C. Section 12182(b)(2)(A)(ii).  Pursuant this latter Subsection, the Department Of Justice

("DOJ") promulgated the Regulation, which provides, *inter alia*:

> (1) Reservations made by places of lodging. A public accommodation that owns, leases (or leases to), or operates a place of lodging shall, with respect to reservations made by any means, including by telephone, in-person, or through a third party -
> (i) Modify its policies, practices, or procedures to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms;
> (ii) Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs.......

Each case involves a completely separate hotel. Each hotel books rooms through entirely separate websites. Even if, for example, multiple hotels use Expedia or another common platform, their websites are completely different - with each being specific to the particular hotel. Each hotel has different types of rooms, including entirely different accessible rooms. They have entirely different accessible features (or non-compliant) features, are subject to different requirements and the information that they must provide are unique to each hotel. Moreover, the information that they either did or did not post or provide either on their own websites or the third party sites differs from one hotel to the next.

To begin, each hotel's physical compliance requirements with the architectural standards differ, depending on when the hotel was first constructed and when alterations were made. Hotels built after January 31, 1993, are governed by 42 U.S.C. Section 12183(a)(new construction) and the architectural guidelines promulgated pursuant thereto. Any alteration made after that date must also comply with the

architectural guidelines "to the maximum extent feasible". 42 U.S.C. Section 12183(b). With respect to older hotels, 42 U.S.C. Section 12182(b)(2)(A)(iv) requires that they remove barriers to the extent readily achievable. standards. *Pickern v. Best Western Timber Cove Lodge Marina Resort*, 2002 U.S. Dist. LEXIS 1709 *6 (E.D. Ca. 2002). The regulations explain that such barrier removal measures or alterations must comply with the ADAAGs to the maximum extent feasible. See 28 C.F.R. 36.304(d), 28 C.F.R. 36.402; 28 C.F.R. 36.406.[1]

The architectural guidelines which must be followed again depend on when the alteration or new construction occurred. See 28 C.F.R. Section 36.406. Any new construction or alterations which occurred between January 31, 1993 and September 15, 2010 must comply with the 1991 ADA Standards For Accessible Design. Any new construction or alterations which occurred after March 15, 2012 must comply with the 2010 ADA Standards For Accessible Design. Anything occurring between September 15, 2010 and March 15, 2020 must comply with either standard.

With respect to the sort of information a hotel's ORS must provide, the DOJ's guideline states as follows:

> A number of these [disabled] commenters pointed out that it can be difficult or impossible to obtain information about accessible rooms and hotel features and that even when information is provided it often is found to be incorrect upon

---

[1] 28 C.F.R. Part 36.304(d) provides that barrier removal measures shall comply with the requirements applicable to alterations under parts 36.402 and 36.404 through 36.406. 28 C.F.R. Part 36.406 provides that alterations must comply with either the ADAAGs or 2010 ADA Stds., depending on the date the alteration was implemented.

arrival.... [2]

DOJ Guideline, p. 77.

> The Department recognizes that a reservations system is not intended to be an accessibility survey. However, specific information concerning accessibility features is essential to travelers with disabilities. Because of the wide variations in the level of accessibility that travelers will encounter, the Department cannot specify what information must be included in every instance. For hotels that were built in compliance with the 1991 Standards, it may be sufficient to specify that the hotel is accessible and, for each accessible room, to describe the general type of room (e.g., deluxe executive suite), the size and number of beds (e.g. two queen beds), the type of accessible bathing facility (e.g. roll-in shower), and communications features available in the room (e.g. alarms and visual notification devices....
> For older hotels with limited accessibility features, information about the hotel should include, at a minimum, information about accessible entrances to the hotel, the path of travel to guest check in and other essential services, and the accessible route to the accessible room or rooms. In addition to the room information described above, these hotels should provide information about important features that do not comply with the 1991 Standards. For example, if the door to the ''accessible" room or bathroom is narrower than required, this information should be included (e.g., door to guest room measures 30 inches clear). This width may not meet current standards but may be adequate for some wheelchair users who use narrower chairs. In many cases, older hotels provide services through alternatives to barrier removal, for example, by providing check in or concierge services at a different, accessible location.

DOJ Guideline, p. 78.

The 1991 ADA Standards can be found at ada.gov/1991ADAstandards_index. The 2010 ADA standards can be found at ada.gov/2010ADAstandards_index. These standards contain exact specifications for such things as the number of accessible rooms a hotel must have (depending on the total number of rooms), how many rooms

---

[2] In *Kennedy v. Siesta Inn & Suites, Inc*., 2020 U.S. App. Lexis 31073 *7 (11th Cir. 2020), this failure of a hotels ORS's information to match the actual conditions at the property were one reason cited by the Eleventh Circuit as a basis for reversal.

must have roll-in showers, the requirements and positioning of grab bars, accessible lavatories, guest rooms, peep holes, commodes, maneuvering space, reach range of objects, handicap parking spaces, registration counters, pools, accessible routes and a myriad of other items, ramps, stairs, railings, elevators, etc..

Thus, each hotel was built at a different time, had alterations at different times, and are therefore subject to different standards.  Each hotel has different accessible rooms and varying levels of compliance with the applicable standards. For example, any hotels constructed after 1993 which are in full compliance with the applicable regulations, have more limited requirements. For example, they can simply identify their accessible rooms and provide information regarding the sort of bed (i.e. king), the sort of bathing facility (i.e. roll-in shower), type of view (riverview, city view, pool view, balcony) etc, and then provide an option for reserving the room.  They then must also include such references as "accessible pool", "accessible parking spaces", "accessible breakfast bar". This list varies, depending on what the particular hotel offers and whether or not the features are truly compliant in accordance with the applicable ADA standards.

For hotels that have conditions deviating from the applicable standards, their reservations systems must provide far more information. For example, "no pool lift", "handicap parking spaces with slope of 8%", "no curb ramps", "no accessible registration counter", "rear grab bar missing in lobby restroom", "fitness room inaccessible", "business center inaccessible", "breakfast bar inaccessible", "restaurant,

lounge, tiki bar, BBQ, picnic facilities...inaccessible" - the list of features differs vastly from hotel to hotel and depends entirely on the physical conditions specific to each hotel.  Fashioning appropriate injunctive relief in each case will require a physical examination of that hotel's property and comparison to the applicable standards to ensure that the proper information is then included on the hotel's ORS.

Then, with respect to each hotel, even if it does post the required information to its ORS, the next issue is whether or not the hotel properly reserves the accessible rooms for disabled persons to try to book them, as required by 28 C.F.R. Section 36.203(e)(1)(iii),(iv) and (v).

It is therefore not surprising that Defendant failed to cite a single ADA case in which any court held that ADA cases against different defendants and different properties are "related".

### III.    Defendant And Its Counsel Should Be Sanctioned

Defendant and its attorney seek their attorneys fees, citing Fed. R. Civ. P. 11. However, they never complied with the requirements of Rule 11(c)(2), which require that the motion be served at least 21 days prior to filing with the Court.

Moreover, for the reasons set forth above, Defendant's motion to strike is completely lacking in any merit, not supported by any case law, and made frivolously and for the purpose of vexatiously multiplying these proceedings.

Sanctions can be imposed against party for filing frivolous motion for sanctions. *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1294 (11th Cir. 2002) (affirming

sanctions against plaintiffs for filing a frivolous motion for sanctions); *Caldwell v. Caesar*, No. 98-1857, 2002 U.S. Dist. LEXIS 16897 (D.D.C. Sept. 6, 2002). Accordingly, Plaintiff respectfully requests that this Court award Plaintiff the fees required to defend against this frivolous sanctions motion. See also, *Caribbean Wholesales & Serv. Corp. v. U.S. JVC Corp.*, 101 F. Supp. 2d 236, 246 (S.D.N.Y. 2000) (applying Rule 11(c)(1)(A) and awarding attorneys' fees to party forced to defend against frivolous sanctions motion).

Moreover, Defendant's counsel is separately liable under 28 U.S.C. Section 1927, which provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Defendant has the audacity of seeking sanctions, yet fails to cite even a single authority in support of its argument (and has none to cite). For these reasons, Defendant and its attorney have crossed the line from good faith advocacy to bad faith and sanctionable behavior.

**IV.   Conclusion**

For the foregoing reasons, Defendant's Motion must be denied and Defendant and its attorney should be ordered to pay the attorneys fees incurred in responding to their frivolous motion.

                       Respectfully submitted,

                              <u>s/ Suzette M. Marteny Moore</u>
                              Suzette M. Marteny Moore
                              Of Counsel, Thomas B. Bacon, P.A.
                              2690 S. Combee Rd.
                              Lakeland, FL 33803
                              863-229-2140
                              S.Moore@SMooreLaw.com
                              Eservice@SMooreLaw.com

**Certificate of Service**

    I hereby certify that a true and correct copy of the foregoing was served on all counsel of record using the Court's CM/ECF filing system on this 12th day of November, 2020.

                              By: <u>/s/ Suzette Marteny Moore</u>