**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

**Case No: 1:20-cv-2475-NYW**

**DEBORAH LAUFER,**
                    **Plaintiff,**
**v.**

**RANDALL J. LOOPER and**
**CYNTHIA C. LOOPER dba**
**ELK RUN INN,**
                    **Defendants.**

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS**

---

I.    **Introduction**

Plaintiff, is a disabled person as defined by the Americans With Disabilities Act, 42 U.S.C. Sections 12181, et seq. ("ADA"). Defendant books rooms for its hotel through an online online reservations service operated through multiple websites. (Hereinafter "websites", "online reservations systems" or "ORS".) Laufer Affid., para. 6, Exhibit A attached hereto.  The purpose of this ORS is so that Defendant can reach out and market to persons all over the country, including Florida,  in their own homes,  to solicit their patronage, provide them with information so that they can make a meaningful choice in planning trips, and, in some instances, book a room at the hotel.  As such, the Defendant's ORS is required to comply with the requirements of 28 C.F.R. Section 36.302(e)(1)(hereinafter "Regulation"), by identifying and allowing for booking of accessible rooms and providing accurate and sufficient information as to whether all the features at the hotel are accessible. On multiple occasions prior to the filing of this lawsuit, Plaintiff reviewed the ORS for Defendant's hotel and found that it did not comply with the

Regulation. Laufer Affid., para. 6. Plaintiff therefore filed the instant action for injunctive relief pursuant to the ADA. Plaintiff also has a system to ensure that she properly maintains standing. *Id*. at para. 8. She maintains a list of all hotels she has sued over ORS violations. *Id.* She goes through and updates this list constantly. *Id.* With respect to each hotel she sues or has sued, she revisits the hotel's ORS shortly after the complaint is filed. She also records the date when the ORS is required to be complaint and then revisits it. By this system, Plaintiff has already revisited the ORS for this hotel after having filed her Complaint. *Id.*

## II.    The Applicable Standard

A court "must convert a Rule 12(b)(1) motion to one under Rule 12(b)(6), or for [Rule 56] summary judgment, "'if the jurisdictional question is intertwined with the merits of the case.'" *Franklin v. Sav. Corp. v. U.S.*, 180 F.3d 1124, 1129 (10th Cir. 1999); *Bell v. U.S.*, 127 F.3d 1226, 1228 (10th Cir. 1997); *Wheeler v. Hurdman*, 825 F.2d 257, 259 (10th Cir. 1987). "When deciding whether jurisdiction is intertwined with the merits of a particular dispute, 'the underlying issue is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim.'" *Davis ex rel. Davis v. U.S.*, 343 F.3d 1282, 1296 (10th Cir. 2003)(Hartz, J.)(quoting *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1324 (10th Cir. 2002). Under Fed. R. Civ. P 12(b)(6), the allegations of the complaint must be taken as true. *Mobley v. McDormick*, 40 F.3d 337, 340 (10th Cir. 1994). Under the standard governing rule 56, a court cannot weigh the evidence, but can only assess the threshold issue whether a genuine issue exits as to material facts requiring a trial and must resolve all reasonable inferences and doubts in the favor of the non-moving

party. *Begay v. Unites States*, 188 F.Supp.3d 1047, 1073-74 (D. N.M. 2016)(citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986); *Hunt v. Cromartie*, 526 U.S. 541, 550-55 (1999)

In the case at bar, Defendant is challenging whether or not Plaintiff suffered an injury. These issues are inextricably intertwined with the merits of her claims under 42 U.S.C. Section 12182 and right to injunctive relief pursuant to 42 U.S.C. Section 12188. As Plaintiff is supplementing her response with an affidavit, this Court must apply the standards of Rule 56.

## III.   Defendant's Theory Has Been Widely Rejected

Defendant ignores the overwhelming body of caselaw that hold that the law omits any requirement that the disabled plaintiff intend to book a room or visit the hotel. Although this Plaintiff intends to visit Colorado, stay in hotels, and is injured because the failure of the Defendant's hotel to comply with the Regulation deprives her of the information she needs to plan her trip, none of this is required. In other words, the Plaintiff's encounter with the discriminatory information is sufficient.  In *Laufer v. U.L.S.T., LLC dba Waterfront Hotel & Marina*, 2020 U.S. Dist. LEXIS 206417  (N.D.Ill. 11/4/20) ("Watefront"), one court recently held that Laufer has standing to sue for strictly informational injury for encountering a discriminatory ORS even in the absence of any intent to ever travel to the area of the hotel. In *Parks v. Richard*, 2020 U.S. Dist. Lexis 86790 (M.D. Fla. 2020), one court rejected the defendant's argument that the plaintiff needed to intend to book a room at the hotel. The court held that the:

> ADA claim is based upon [defendant's] website failing to identify the accessible features of the motel and its rooms, in violation of 28 C.F.R. § 36.302(e)(1)(ii).

> Therefore, the relevant 'future injury' inquiry relates to the motel's website and reservation system, rather than the motel's physical property." [Citation omitted.] While Parks may have never visited the motel, he visited its website and several third-party sites.

*Id*. at *7.  In *Poschmann v. Fountain TN, LLC*, 2019 U.S. Dist. Lexis 159417, **4-6 (M.D. Fla. 2019), another court rejected the physical nexus argument, holding that the plaintiff's ADA claim was based on the discriminatory website and, "[t]herefore, the relevant "future injury" inquiry relates to the motel's website and reservation system, rather than the motel's physical property."  In *Poschmann v. Coral Reef of Key Biscayne Developers, Inc*., 2018 U.S. Dist. Lexis 87457. *8 (S.D. Fla. 2018), another court recognized the plaintiff's motive for returning to the discriminatory website as either " to determine whether the Hotel is accessible to him, and, if so, to reserve a room at the Hotel **or** to test the Hotel's Website reservation system for its compliance with the ADA." (Emphasis added.) By inclusion of the word "or" the court held that motive to review the website solely to test it was sufficient and that intending to book a room is not required. Numerous other courts have rejected the intent-to-book a room/physical nexus argument. See *Kennedy v. Nisha, Inc*., 2020 U.S. Dist. LEXIS 170829 (M.D. Fla. 9/17/20)(the weight of authority supports standing). See also *Kennedy v. Galleon Resort Condominium Assn, Inc., et al.*, 19-cv-62421-CMA, DE 52 (S.D. Fla. 1/28/20)[1]; *Kennedy v. Gold Sun Hospitality, LLC*, 8:18-cv-842-T-33CPT, DE 23, at pp.  30-31, (M.D. Fla. June 18, 2018);  *Kennedy v. Swagath Hospitality, LLC*, 0:19-cv-60583-DPG, DE 27 (S.D. Fla. 1/2/2020);  *Kennedy v. WGA*, 2:19-cv-0095-RWS, DE 16, p. 9 (N.D. Ga. 11/5/2019);  *Kennedy v. Nila Investments, LLC*, 2:19-cv-90-LGW-BWC, DE

---

[1]The unpublished opinions rejecting the physical nexus argument are contained as exhibits to Plaintiff's Request For Judicial Notice, filed contemporaneously herewith.

34 (S.D. Ga. 7/1/20); *Kennedy v. New Yorker Hotel, Miami, LLC*, 0:18-cv-62897-WPD, DE

34 (6/6/19); *Kennedy v. Murnane, et al.*, 0:18-cv-63086-WPD, DE 10 (S.D. Fla. 3/5/19).

Numerous other courts have held that a disabled person suffers injury-in-fact when

they visit a hotel's discriminatory online reservations system. See  *Kennedy v. Sai Ram*

*Hotels, LLC*, 2019 U.S. Dist. LEXIS 80111, *4-6 (M.D. Fla. 5/13/19), citing *Honeywell v.*

*Harihar Inc.*, 2018 U.S. Dist. LEXIS 203740,(M.D. Fla. Dec. 3, 2018); *Kennedy v. Floridian*

*Hotel, Inc.*,  2018 U.S. Dist. LEXIS 207984, at *9 (S.D. Fla. 2018);  *Brooke v. Regency Inn-*

*Downey, LLC*, 2017 U.S. Dist. Lexis 150716 (D. Ariz. 2017). Numerous additional cases

support the proposition that viewing a discriminatory commercial website constitutes injury-

in-fact in the context of vision impairment based claims. See, e.g. *Carroll v. Fedfinancial*

*Fed. Credit Union*, 324 F. Supp. 3d 658, 664 (E.D. Va. 2018); *Access Now, Inc. v. Otter*

*Prods., LLC*, 280 F. Supp. 3d 287, 294 (D. Mass. 2017); *Jones v. Piedmont Plus Fed.*

*Credit Union*, No. 1:17-CV-5214- RWS, 2018 WL 4694362, at *1 (N.D. Ga. Sept. 26,

2018).

Courts have also rejected the applicability of ADA cases involving physical violations

at physical properties. See *Camacho v. Vanderbilt Univ.*, 2019 U.S. Dist. Lexis 209202, *30

(S.D.N.Y. 2019) (holding that cases applying distance element to discrimination at physical

properties are irrelevant to website discrimination claims). The issue is whether the plaintiff

would return to the discriminatory website: not the physical property. *Id.* See also *Parks,*

2020 U.S. Dist. Lexis 86790 at *6;    *Kennedy v. Sai Ram Hotels*, 2019 U.S. Dist. Lexis

80111, * 9 (M.D. Fla. 2019).  Another court has held that the distance factor not applicable

to commercial websites (in vision impaired discrimination) because (1) website cases do

not involve physical locations; and (2) no travel is required. *Gniewkowski, et al v. Lettuce Entertain You Enterprises, Inc., et al.*, 251 F. Supp.3d 908, 920 (W.D. Pa. 2017).[2]

## IV.    Testers Have Standing

Testers have standing under Title III of the ADA. *Colo. Cross-Disability Coalition v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211 (10th Cir. 2014); *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1333-34 (11th Cir. 2013); *Civil Rights Educ. & Enforcement Ctr. v. Hosp. Properties Trust*, 867 F.3d 1093, 1101 (9th Cir. 2017). See also *Tandy v. City of Wichita*, 380 F3d 1277, 1285-90 (10th Cir. 2004)(recognizing tester standing to sue under Title II ADA).  As such, the disabled person's motive is entirely irrelevant because all that matters is whether they encountered discrimination as defined by plain words the Statute.  *Marod*, *passim*.  Some courts have held that status a tester " plausibly increases the likelihood that she will visit the [defendant's] website again to test its ADA compliance." *Kennedy v. Sai Ram Hotels*, 2019 U.S. Dist. Lexis 80111, * 9 (M.D. Fla. 2019); *Marod*, 733 F.3d at 1336 (explaining that plaintiff's status as a tester indicated that he would revisit the property many times and therefore tended to show a real and immediate threat of future injury).  Moreover,"[i]t is not unprecedented in this country for advocacy groups and individual members of advocacy groups to find it necessary to file a long trail of lawsuits in federal courts to enforce legal and civil rights." *Marod*, 733 F.3d at 1326. The entire purpose of the ADA and its fee shifting provision was to eradicate

---

[2]The distance factor is also not applicable in the context of hotels because hotels are, by nature, established to accommodate travelers from afar. *Parks*, 2020 U.S. Dist. Lexis 86790 *6; *Bodley v. Plaza Management Corp.*, 550 F.Supp.2d 1085, (D. Ariz. 2008);  *D'Lil v. Best Western Encina Lodge & Suites*, 415 F. Supp.2d 1048, 1056 (C.D. Cal. 2006).

discrimination against disabled persons by encouraging individuals to act as private attorneys general to actively enforce the provisions of these civil rights statutes. See *Hensley v. Eckerhart*, 461 U.S. 424, 445 (1983) ("All of these civil rights laws depend heavily upon private enforcement..."). Indeed, if it were not for this Plaintiff, Defendant would be free to discriminate against disabled persons.

**V.     The Rules Of Statutory Construction Prohibit The Imposition Of A Physical Nexus Requirement**

**A.     Plain Language**

Under the plain meaning rule of statutory construction a court must give effect to that language and refrain from further stautory interpretation. *In re. Foah*, 2012 Bankr. Lexis 1206, n. 7 (B.R. N.M. 2012). The rule prohibits a court from abandoning the plain language of a statute unless it is ambiguous. *In re Spade*, 258 B.R. 221, 228 (B.R. Colo. 2001). "As with any question of statutory interpretation, our analysis begins with the plain language of the statute. ... It is well established that, when the statutory language is plain, we must enforce it according to its terms." *Jiminez v. Quarterman*, 555 U.S. 113, 118 (2009)(citations omitted). If the language is unambiguous, no further inquiry is necessary. *Clark v. Astrue*, 602 F.3d 140, 147 (2d Cir. 2010). A court cannot rewrite a statute to reflect a meaning it deems more desirable. *Ali v. Fed. Bureau of Prisons, 552 U.S. 214, 228 (2008)*. A court is not allowed to add or subtract words from a statute. *Marod*, 733 F.3d at 1334. In the case at bar, the Defendant essentially requests that this Court ignore the plain and unambiguous words of the Statute and Regulation and judicially add an intent or physical nexus requirement, in violation of the applicable rules of statutory construction.

Plaintiff's claims are based on the following: 42 U.S.C. Section 12188(a) provides

Case 1:20-cv-02475-NYW  Document 21  Filed 11/12/20  USDC Colorado  Page 8 of 21

for injunctive relief to "any person who is being subjected to discrimination on the basis of disability in violation of this subchapter..." 42 U.S.C. Section 12182(a) provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the ... services ... of any place of public accommodation.... 42 U.S.C. Section 12182(b)(2)(A) provides that the definition of "discrimination" includes: "a failure to make reasonable modifications in policies, practices, or procedures ... to afford such ... services ... to individuals with disabilities...."  42 U.S.C. Section 12182(b)(2)(A)(ii).  Pursuant this latter Subsection, the Department Of Justice ("DOJ") promulgated the Regulation, which requires that hotel online reservations systems provide a booking option for accessible rooms (in the same manner as other rooms) and additional provide information about whether or not the features at the hotel are truly accessible.    The Statute and Regulation[3] are directly on point and unambiguously spell out all the elements of a cause of action. Failure of an online reservations system to comply with the requirements of the Regulation constitutes a failure to comply with 42 U.S.C. Section 12182(b)(2)(A)(ii).  This qualifies as "discrimination" in denial of full and equal enjoyment of a service[4] and is thus a violation of 42 U.S.C. Section 12182(a) and is thus fully actionable without more required. It also constitutes "discrimination' under Section 12182(b)(2)(A)(ii). Under Section 12188, "any person who is being subjected to discrimination" has the right to sue.      The rules of

---

[3]A regulation promulgated pursuant to Congressional authority must be given controlling weight. *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 843-44 (1984).

[4]A website is a "service" of a place of public accommodation. *Haynes v. Dunkin Donuts, LLC*, 741 Fed. Appx. 752, 754 (11th Cir. 2018) (unpublished) (describing a commercial website as a "service" of a place of public accommodation); *Nat'l Fed'n Of The Blind v. Target Corp.*, 452 F. Supp. 946, 953 (N.D. Cal. 2006)(same).

statutory construction mandate a finding that a physical nexus requirement can NOT be imposed because any language expressing this requirement is conspicuously missing from the above cited Regulation and Statutory subsections.

### B.    Truthful Information, Testers And Intent

In *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), the Supreme Court held that black testers had suffered injury under the Fair Housing Act and had the right to sue for deprivation of truthful information, even though they did not intend to rent or purchase an apartment. The Court held  that:

> "As we have previously recognized, "actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing . . . .'" *Warth v. Seldin*, [522 U.S. 490], 500 [(1975)], quoting *Linda R. S. v. Richard D*., 410 U.S. 614, 617, n. 3 (1973). Accord, *Sierra Club v. Morton*, 405 U.S. 727, 732 (1972); *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 212 (1972) (WHITE, J., concurring). Section 804(d), which, in terms, establishes an enforceable right to **truthful information** concerning the availability of housing, is such an enactment. A tester who has been the object of a misrepresentation made unlawful under § 804(d) has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing to maintain a claim for damages under the Act's provisions. That the tester may have approached the real estate agent fully expecting that he would receive false information, and without any intention of buying or renting a home, does not negate the simple fact of injury within the meaning of § 804(d). See *Pierson v. Ray*, 386 U.S. 547, 558   (1967); *Evers v. Dwyer*, 358 U.S. 202, 204 (1958) (per curiam).

*Havens Realty*, 455 U.S. at 373-74 (Emphasis added.)

In *Marod*, 733 F.3d at 1330-33, the Eleventh Circuit compared the operative language of the ADA and found that it substantially paralleled the same language used by the *Havens Realty* Court and the Tenth Circuit's holding in *Tandy v. City Of Wichita*, 380 D.3d 1277 (10th Cir. 2004)[5], in holding that testers have standing and that intent and motive

---

[5]In *Tandy*, the Tenth Circuit had performed a similar analysis in holding that testers have standing under the ADA's Title II.

are entirely irrelevant.

In *Tandy*, 380 F3d at 1290, the Tenth Circuit applied *Havens Realty* to a Title II

ADA action as follows:

> [Plaintiff] has shown that her injury is traceable to the action she seeks to have adjudicated. The action she seeks to have adjudicated is Wichita Transit's alleged **failure to provide her with adequate information** concerning its transportation services.... [Plaintiff's] affidavit suffices, at this stage of litigation, to show that she could not obtain any information from the TDD line. [Plaintiff's] injury is therefore traceable to Wichita Transit's allegedly wrongful failure to provide her with adequate information concerning its transportation services. This injury is redressable by compensatory or nominal damages. Therefore, Jeffries has standing to sue for damages.

(Emphasis added).  Thus, under *Havens Realty* and *Tandy*, testers have standing and

suffer injury in fact when they are deprived of information which a defendant is obligated

to provide them. Moreover, they have standing as testers and no intent requirement can

be imposed. Rather, a court must look strictly to the plain language of the statute which

created the injury.

In *Abercrombie & Fitch Co.*, 765 F.3d at 1211, the Tenth Circuit followed *Marod* and

held that because Title III provides remedies for "'any person' subjected to illegal disability

discrimination", motivation is irrelevant.

In addition to *Havens Realty* and *Tandy*, numerous courts have recognized injury

strictly limited to the deprivation of information with nothing additional required. In *Spokeo,*

*Inc. v. Robins*, 136 S. Ct. 1540 (2016), the Supreme Court held that improper information

which violated the Fair Credit Reporting Act did not, by itself, constitute injury, but

specifically recognized the existence of statutes which provide that the dissemination of

improper information constitutes an injury with nothing more required.

Just as the common law permitted suit in such instances, the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified. See *Federal Election Comm'n v. Akins*, 524 U. S. 11, 20-25, [] (1998) (confirming that a group of voters' "inability to obtain information" that Congress had decided to make public is a sufficient injury in fact to satisfy Article III); *Public Citizen v. Department of Justice*, 491 U. S. 440, 449, [] (1989) (holding that two advocacy organizations' failure to obtain information subject to disclosure under the Federal Advisory Committee Act "constitutes a sufficiently distinct injury to provide standing to sue").

*Spokeo,* 136 S.Ct. at 1549-50.  Numerous other circuit courts have followed *Havens Realty*, 455 U.S. 363 (1982) in recognizing informational injury. *Ragin v. Harry Maclowe Real Estate* Co., 6 F.3d 898, 904 (2nd Cir. 1993)(black testers had standing to sue over discriminatory advertisement even though they had no intention of renting apartment); *Bensman v. U.S. Forest Serv*., 408 F.3d 945, 955-57 (7th Cir. 2005)(surveying cases and statutes where informational injury is recognized and actionable); *Watts v. Boyd Properties*, 758 F.2d 1482 (11th Cir. 1985)(tester who had no intention of renting apartment had standing to sue for receiving misleading information from defendant about apartment availability); *Carter v. Welles-Bowen Realty, Inc.* 553 F.3d 979, 989 (6th Cir. 2009)(discussing informational injury); *Wilderness Soc'y v. Rey*, 622 F.3d 1251, 1258-60 (9th Cir. 2010)(discussing informational injury); *In re Nickelodeon Consumer Privacy Litig*., 827 F.3d 262, 273-74 (3rd Cir. 2016)(recognizing intangible harm as including unlawful denial of access to information subject to disclosure);  *Carello v. Aurora Policemen Credit Union*, 930 F. 3d 830, 832-33 (7th Cir. 2019)(recognizing informational injury).

A reading of the above cited cases leads to a summary of the applicable law as follows. If the defendant is under a legal mandate to provide information to the class of persons of whom plaintiff is a member, then failure to provide that information gives rise

11

to injury-in-fact, or "informational injury" and nothing more is required and the plaintiff's intent or tester status is irrelevant.[6] Application of this doctrine is illustrated in *Cooper v. Stephen Bruce & Assocs.*, 2019 U.S. Dist Lexis 1013 (W.D. Ok. 2019). In that case, the court considered *Spokeo* and held that the plaintiff's receipt of misleading information was sufficient injury, with nothing additional required, because such was a violation of the Fair Debt Collection Practices Act.

## C.    Restrictive Language Found Elsewhere Cannot Be Imported

It is highly significant, and dispositive, that other subsections contain restrictive language which is conspicuously absent from the subsections and Regulation that govern an ORS.

> "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."

*Bates v. U.S.*, 522 U.S. 23, 29-30 (1997)*; INS v. Cardoza—Fonseca*, 480 U.S. 421, 432 (1987).  Although not an ADA case, the Supreme Court's decision in *Bates* is helpful. There, the Court analyzed whether a lower court could properly impose an intent requirement into a criminal statute and held that because such a requirement was present in a different subsection, but missing from the one at issue, that it could not be judicially imposed. *Id.* at 29-30. This concept was also applied in *Havens Realty*, 455 U.S. at 374, which noted that the requirement of a "bona fide offer" was included in one section of the FHA, but could not be applied to the testers at issue because it was not included in the

---

[6]For example, the statute at issue in *Spokeo* required the defendant to provide accurate information to third parties (creditors) - of whom the plaintiff was not a member of the class. By contrast, the Regulation and Statute in this instance require that hotels provide certain information to disabled persons - the class of which this plaintiff is a member.

section that governed. In *Marod*, 733 F.3d at 1333 and *PGA Tour v. Martin*, 532 U.S. 661, 678-79 (2001), it was noted that because a "client or customer" restriction was contained in another subsection of the ADA, but absent from the provisions that governed their cases (12182(a)), it could not be imposed as a requirement.

In addition to the "clients or customers" requirement of 42 U.S.C. Section 12182(b)(1)(A), two other subsections of this statute also contain additional restrictions imposing physical nexus or intent requirements. 42 U.S.C.  Section 12182(b)(2)(A)(i) prohibits:

> "the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities ***from*** fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations..." (Emphasis added.)

In that Subsection, the word "from" is critical because its insertion in the Subsection means that a disabled person's encounter with discriminatory eligibility criteria by itself does not give rise to a cause of action unless and until that criteria prevents them **"from"** full and equal access to goods or services. Similarly, 12182(b)(2)(A)(iii) defines discrimination as including:

> a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals **because of** the absence of auxiliary aids and services...

(Emphasis added.) Under this subsection, absence of an auxiliary aid (i.e. screen reader software), is not discrimination unless and until it additionally causes exclusion, denial of services, segregation or other different treatment. In short, 12182(b)(2)(A) has four sub-parts: two of which have physical nexus requirements and two of which do not. 12182(b)(2)(A)(ii), which governs online reservations systems, does NOT have any such

requirement.  Because such language is conspicuously absent from any of the provisions that govern online reservations systems, it cannot be imposed.

**VI.      Defendant's Reliance on *Mann* And *Laxmi* Is Misplaced**

Defendant cites *Laufer v. Mann Hospitality, LLC*, 1:20-cv-620-JRN, DE 15 (W.D. Tex. 9/30/20), in which one court in the Western District of Texas recently ruled that Laufer lacks standing. *Mann* was appealed to the U.S. Court Of Appeals For the Fifth Circuit, no 20–50858, and Plaintiff is confident that the *Mann* decision will be reversed.  The *Mann* Court entirely overlooked the fact that website injury is encountered when the plaintiff reviews the website and that is the locus of the injury. The *Mann* Court also completely ignored the plain language of the statute and regulation, as well as the Supreme Court, various circuit courts and slew of cases on point.  The only website case cited by the *Mann* Court was *Rizzi v. Hilton Domestic Operating Co., Inc.*, No. CV 18-1127, 2019 WL 5874327 (E.D.N.Y. July 18, 2019), for the point that a plaintiff did not have standing for website discrimination where he did not intend to visit the hotel. That is not what the *Rizzi* decision stood for, rather it turned solely on the fact that the plaintiff had identified the WRONG websites - having failed to name any websites that actually were used for reservations. *Mann*'s inability to read a statute or follow the law was further demonstrated by its ruling that the defendant was entitled to attorney fees pursuant to  28 U.S.C. Section 1919 - which will be discussed below.

Defendant's reference to the *Laxmi* orders issued in the Nothern District Of New York are unavailing. In those cases, the court only issued an order requiring that plaintiff file a memorandum to explain her standing. Despite many months having since passed,

the *Laxmi* court has never ruled.

## VII.    Plaintiff Has Established Intent To Return

Various courts have held that status a tester " plausibly increases the likelihood that he or she will visit the [defendant's] website again to test its ADA compliance." *Kennedy v. Sai Ram Hotels*, 2019 U.S. Dist. Lexis 80111, * 9 (M.D. Fla. 2019). *Marod*, 733 F.3d at 1336 (explaining that plaintiff's status as a tester indicated that he would revisit the property many times and therefore tended to show a real and immediate threat of future injury); *Poschmann*, 2018 U.S. Dist. Lexis 87457 at *8(holding that returning to the website to check it for compliance with the Regulation is a valid reason). In *Camacho*, the defendant had challenged plaintiff's intent on the basis that he had filed 50 similar complaints regarding the websites of schools all over the country. 2019 U.S. Dist. Lexis 209202, at *29. The court held that the plaintiff did not need to intend to visit the subject properties, but only their websites. *Id.*

Critically, in the instant case, the Plaintiff has a system whereby she makes sure she visits the ORS in each case shortly after the respective complaint is filed, then again when the defendant is required to bring its ORS into compliance with the law. *Id*. Thus, she ensures that she either will again suffer injury if the defendant does not comply with the law, or will benefit if the defendant does indeed comply. Under *Parks*., 2020 U.S. Dist. Lexis 86790, at *7, this suffices to establish standing.

## VIII.    Plaintiff Does Intend To Visit Colorado

Even though such is not necessary for purposes of standing, Plaintiff does indeed intend to visit Colorado as soon as the Covid crisis abates. Laufer Affid., para. 5.

Significantly, her niece lives in Colorado and Laufer has visited her many times, including once a year. *Id*. She travels throughout the State, intends to do so in her next trip, and must stay in area hotels. However, because this Defendant and so many others fail to comply with the law, Plaintiff lacks the information she requires to make a meaningful choice. *Id.*

## IX.    Defendant Is Liable For Discrimination Through Third Party ORS Providers

Defendant attempts to disclaim liability for its discrimination through third party providers. Defendant omits the fact that these third parties only provide their services pursuant to a contract with the hotel, Defendant accepts reservations made through them, and Defendant provided them with the information they have and Defendant interacts with these providers on a constant basis. The Regulation imposes liability on Defendant for its discriminatory online system, even if operated through third parties.   28 C.F.R. Section 36.302(e)(1) (the "Regulation"), provides:

> (1)Reservations made by places of lodging. A public accommodation that owns, leases (or leases to), or operates a place of lodging shall, with respect to reservations made by any means, including by telephone, in-person, **or through a third party** -

(Emphasis added.) Thus, the Regulation is unequivocally clear and imposes liability on hotels which operate discriminatory reservations systems through third parties.  The DOJ, which promulgated this Regulation, issued guidelines on the subject at issue. In this regard, the DOJ stated:

> Hotels and organizations commenting on their behalf also requested that the language be changed to eliminate any liability for reservations made through third parties, arguing that they are unable to control the actions of unrelated parties. The rule, both as proposed and as adopted, requires covered public accommodations to ensure that reservations made on their behalf by third parties are made in a

16

> manner that results in parity between those who need accessible rooms and those who do not.
>
> Hotels and other places of lodging that use third party reservations services must make reasonable efforts to make accessible rooms available through at least some of these services and must provide these third party services with information concerning the accessible features of the hotel and the accessible rooms. To the extent a hotel or other place of lodging makes available such rooms and information to a third party reservation provider, but the third party fails to provide the information or rooms to people with disabilities in accordance with this section, the hotel or other place of lodging will not be responsible.

Guidelines for 28 C.F.R. Part 36, Nondiscrimination on the Basis of Disability in Public Accommodations and Commercial Facilities, Exhibit B attached hereto, p. 133. Thus, it is plainly clear that a hotel is directly liable for any failure of its online reservations system to comply with the Regulation, even if operated through third parties. See *Kennedy v. Siesta Inn & Suites, Inc*. 2020 U.S. App. Lexis 31073, ** 7-8 (11th Cir. 9/30/20)(unpublished)(hotel liable for discrimination through third party sites); *Parks v. Richard*, 2020 U.S. Dist. Lexis 127639, passim (M.D. Fla. 7/21//20)(same).

## X.  Defendant's Claim That Plaintiff Could Have Called The Hotel By Telephone Is Meritless

Defendant argues that Plaintiff could have obtained the information by other means, specifically by telephone. This argument has been previously rejected. See *Poschman*, 2018 U.S. Dist. Lexis 87457(rejecting argument that plaintiff could have telephoned because such is not in the "same manner");  *Juscinska*, 2019 U.S. Dist. Lexis 92550 **9-10 (same).

## XI.  Defendant Is Not Entitled To Attorney Fees

### A.  28 U.S.C. Section 1919 Does Not Provide For Attorney Fees

28 U.S.C. Section 1919 provides: "Whenever any action or suit is dismissed in any

district court, the Court of International Trade, or the Court of Federal Claims for want of jurisdiction, such court may order the payment of just costs." This section does not provide for an award of attorney fees. Compare and contrast this section with 42 U.S.C. Section 12205, which provides:

> In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the U.S., a reasonable attorney's fee, including litigation expenses, and costs...

By inclusion of "attorney's fees... and costs" in 12205, but referencing only "costs" in Section 1919, it is clear that Congress intended that Section 1919 exclude attorney fees. Indeed, several courts have held that Section 1919 excludes any entitlement to attorney fees. See *Wilkinson v. D.M. Weatherly Co.,* 655 F.2d 47, (5th Cir. 1981)(Section 1919 does not allow for attorney fees); *Castillo Grand, LLC v. Sheraton Operating Corp*., 719 F.3d 120, 122 (2d Cir. 2013); *Deutsch v. Abijaoude*, 2017 U.S. Dist. 31934, **14-15 (W.D. Tex. 2017)(discussing the difference between attorneys fees awardable pursuant to Section 12205 and costs awardable under Section 1919). As such 28 U.S.C. Section 1919 would, at most, entitle Defendant to only costs, and not attorney fees.     Indeed, "costs" are narrowly defined by 28 U.S.C. Section 1920 (filing fees, marshal fees, printing fees, witness fees, docket fees, court expert fees, etc.) Attorneys fees are not on this list. Indeed, Defendant has no "costs" within the definition of this section.

Defendant misrepresents *MacIntyre v. JP Morgan Chase Bank, N.A.*, 2019 U.S.Dist. Lexis 176292 **4-5 (D. Colo. 2019). Contrary to Defendant's claim, this case did not state that an award of attorneys fees is authorized under 28 U.S.C. Section 1919, but instead simply held that section 1919 does not preempt other sections which DO provide for such

an award.

**B.      Defendant Is Not Entitled To Attorneys Fees Under Any Circumstance**

Nor is there any other basis for awarding Defendant their attorney fees.

Even if this Court grants dismissal based on jurisdictional grounds, the requirements

for such an award under 42 U.S.C. Section 12205 have not been met. First, this Section

only provides for an award of fees to the "prevailing party". First, the Supreme Court had

defined "prevailing party" in civil rights contexts in *Buckhannon Bd. & Care Home, Inc. v.*

*W. Va. Dep't of Health & Human Resources,* 532 U.S. 598, 603-04 (2002). This requires

that such a party had obtained either an enforceable judgment or court ordered consent

decree. *Id*. Courts have held that dismissal for lack of standing to sue fails to meet this

threshold requirement. See *Access 4 All, Inc. v. Partners Of Kings Pt., Ltd.*, 10-80779, DE

91 (S.D. Fla. 3/8/2012), Exhibit B attached hereto, (dismissal for lack of standing does not

make defendant "prevailing party"): *Nat'l Alliance For Accessibility, Inc. And Denise Payne*

*v. Bhuna Corp*., Case No. 1:11-cv-79, DE 34 (W.D. N.C. April 10, 2012), Exhibit C attached

hereto (same); *Jeffrey Joel Judy v. Pingue*, Case No. 2:08-cv-859, DE 42, p. 9 fn. 1 (S.D.

Oh. Nov. 25, 2009), Exhibit D attached hereto (denying fees to defendant after dismissing

case for lack of standing); *Deutsch,  supra*(discussing the difference between attorneys

fees under Section 12205 and costs under Section 1919 and holding defendant not

prevailing party on dismissed for want of jurisdiction).

Under Fed. R. Civ. P. 41(b), a dismissal for lack of jurisdiction is NOT an

adjudication on the merits.

Even if Defendant were found to be the "prevailing party" it still is not entitled to fees.

In *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978), the Supreme Court held that for a plaintiff to be liable under this Section, the action must have been "'unfounded, meritless, frivolous or vexatiously brought[]'", or "where the action brought is found to be unreasonable, frivolous, meritless or vexatious." The Court stated that:

> In applying these criteria, it is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

*Id*. at 421-22.

As stated above, Plaintiff has ample statutory, regulatory and case law in support of her standing, and the statute's and Regulation's plain language impose on Defendant a legal obligation to provide certain information about its hotel's accessibility to the Plaintiff. This is recognized as injury under *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) and a slew of Circuits and numerous courts within this Circuit, a plaintiff suffers injury in fact and has a cognizable action if the defendant fails to provide the information that is required by law.  Therefore, Plaintiff's claims are not unfounded, meritless, frivolous, unreasonable or vexatious as required by *Christiansburg*.

## XII.    Conclusion

For the foregoing reasons, Defendant's Motion must be denied.

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served via the Court's electronic filing system upon all parties of record this hic2af1dbc2af1loc2f1 November 12, 2020.

_/s/Suzette M. Marteny Moore_
**Suzette M. Marteny Moore**
Of Counsel, Thomas Bacon PA
2690 S. Combee Road
Lakeland, Florida 33803
(863) 229-2140 (T)
(863) 808-0586 (F)
S.Moore@SMooreLaw.com
Eservice@SMooreLaw.com
_Attorneys for Plaintiff_