Skip navigation | PDF version

# Americans with Disabilities Act Title III Regulations

# Part 36 Nondiscrimination on the Basis of Disability in Public Accommodations and Commercial Facilities
(current as of January 17, 2017)

## Table of Contents

Supplementary Information

Revised Final Title III Regulation with Integrated Text

    Subpart A -- General

        36.101 Purpose.
        36.102 Application.
        36.103 Relationship to other laws.
        36.104 Definitions.
        36.105 Definition of Disability
        36.106 -- 36.199 [Reserved]

    Subpart B -- General Requirements

        36.201 General.
        36.202 Activities.
        36.203 Integrated settings.
        36.204 Administrative methods.
        36.205 Association.
        36.206 Retaliation or coercion.
        36.207 Places of public accommodations located in private residences.
        36.208 Direct threat.
        36.209 Illegal use of drugs.
        36.210 Smoking.
        36.211 Maintenance of accessible features.
        36.212 Insurance.
        36.213 Relationship of subpart B to subparts C and D of this part.
        36.214 -- 36.299 [Reserved]

    Subpart C -- Specific Requirements

        36.301 Eligibility criteria.
        36.302 Modifications in policies, practices, or procedures.
        36.303 Auxiliary aids and services.
        36.304 Removal of barriers.
        36.305 Alternatives to barrier removal.
        36.306 Personal devices and services.
        36.307 Accessible or special goods.

of reservations requirements to this category of rental accommodations.

*General rule on reservations.* Section 36.302(e)(1) of the NPRM required a public accommodation that owns, leases (or leases to), or operates a place of lodging to: Modify its policies, practices, or procedures to ensure that individuals with disabilities can make reservations, including reservations made by telephone, in-person, or through a third party, for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms. 73 FR 34508, 34553 (June 17, 2008).

Most individual commenters and organizations that represent individuals with disabilities strongly supported the requirement that individuals with disabilities should be able to make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms. In many cases individuals with disabilities expressed frustration because, while they are aware of improvements in architectural access brought about as a result of the ADA, they are unable to take advantage of these improvements because of shortcomings in current hotel reservations systems. A number of these commenters pointed out that it can be difficult or impossible to obtain information about accessible rooms and hotel features and that even when information is provided it often is found to be incorrect upon arrival. They also noted difficulty reserving accessible rooms and the inability to guarantee or otherwise ensure that the appropriate accessible room is available when the guest arrives. The ability to obtain information about accessible guest rooms, to make reservations for accessible guest rooms in the same manner as other guests, and to be assured of an accessible room upon arrival was of critical importance to these commenters.

Other commenters, primarily hotels, resort developers, travel agencies, and organizations commenting on their behalf, did not oppose the general rule on reservations, but recommended that the language requiring that reservations be made "in the same manner" be changed to require that reservations be made "in a substantially similar manner." These commenters argued that hotel reservations are made in many different ways and through a variety of systems. In general, they argued that current reservations database systems may not contain s guests, travel agents, or other third-party reservations services to select the most appropriate room without consulting directly with the hotel, and that updating these systems might be expensive and time consuming. They also noted that in some cases, hotels do not always automatically book accessible rooms when requested to do so. Instead, guests may select from a menu of accessibility and other room options when making reservations. This information is transmitted to the hotel's reservations staff, who then contact the individual to verify the guest's accessibility needs. Only when such verification occurs will the accessible room be booked.

The Department is not persuaded that individuals who need to reserve accessible rooms cannot be served in the same manner as those who do not, and it appears that there are hotels of all types and sizes that already meet this requirement. Further, the Department has been able to accomplish this goal in settlement agreements resolving complaints about this issue. As stated in the preamble to the NPRM, basic nondiscrimination principles mandate that individuals with disabilities should be able to reserve hotel rooms with the same efficiency, immediacy, and convenience as those who do not need accessible guest rooms. The regulation does not require reservations services to create new methods for reserving hotel rooms or available timeshare units; instead, covered entities must make the modifications needed to ensure that individuals who need accessible rooms are able to reserve them in the same manner as other guests. If, for example, hotel reservations are not final until all hotel guests have been contacted by the hotel to discuss the guest's needs, a hotel may follow the same process when reserving accessible rooms. Therefore, the Department declines to change this language, which has been moved to § 36.302(e)(1)(i). However, in response to the commenters who recommended a transition period that would allow reservations services time to modify existing reservations systems to meet the requirements of this rule, § 36.302(e)(3) now provides a 18-month transition period before the requirements of § 36.302(e)(1) will be enforced.

Hotels and organizations commenting on their behalf also requested that the language be changed to eliminate any liability for reservations made through third parties, arguing that they are unable to control the actions of unrelated parties. The rule, both as proposed and as adopted, requires covered public accommodations to ensure that reservations made on their behalf by third parties are made in a manner that results in parity between those who need accessible rooms and those who do not.

Hotels and other places of lodging that use third-party reservations services must make reasonable efforts to make accessible rooms available through at least some of these services and must provide these third-party services with information concerning the accessible features of the hotel and the accessible rooms. To the extent a hotel or other place of lodging makes available such rooms and information to a third-party reservation provider, but the third party fails to provide the information or rooms to people with disabilities in accordance with this section, the hotel or other place of lodging will not be responsible.

*Identification of accessible features in hotels and guest rooms.* NPRM § 36.302(e)(2) required public accommodations that provide hotel reservations services to identify and describe the accessible features in the hotels and guest rooms offered through that service. This requirement is essential to ensure that individuals with disabilities receive the information they need to benefit from the services offered by the place of lodging. As a practical matter, a public accommodation's designation of a guest room as "accessible" will not ensure necessarily that the room complies with all of the 1991 Standards. In older

accommodations must remove barriers to the extent that it is readily achievable to do so.

Further, hotel rooms that are in full compliance with current standards may differ, and individuals with disabilities must be able to ascertain which features—in new and existing facilities—are included in the hotel's accessible guest rooms. For example, under certain circumstances, an accessible hotel bathroom may meet accessibility requirements with either a bathtub or a roll-in shower. The presence or absence of particular accessible features such as these may be the difference between a room that is usable by a particular person with a disability and one that is not.

Individuals with disabilities strongly supported this requirement. In addition to the importance of information about specific access features, several commenters pointed out the importance of knowing the size and number of beds in a room. Many individuals with disabilities travel with family members, personal care assistants, or other companions and require rooms with at least two beds. Although most hotels provide this information when generally categorizing the type or class of room (*e.g.*, deluxe suite with king bed), as described below, all hotels should consider the size and number of beds to be part of the basic information they are required to provide.

Comments made on behalf of reservations services expressed concern that unless the word "hotels" is stricken from the text, § 36.302(e)(2) of the NPRM essentially would require reservations systems to include a full accessibility report on each hotel or resort property in its system. Along these lines, commenters also suggested that the Department identify the specific accessible features of hotel rooms that must be described in the reservations system. For example, commenters suggested limiting features that must be included to bathroom type (tub or roll-in shower) and communications features.

The Department recognizes that a reservations system is not intended to be an accessibility survey. However, specific information concerning accessibility features is essential to travelers with disabilities. Because of the wide variations in the level of accessibility that travelers will encounter, the Department cannot specify what information must be included in every instance. For hotels that were built in compliance with the 1991 Standards, it may be sufficient to specify that the hotel is accessible and, for each accessible room, to describe the general type of room (*e.g.*, deluxe executive suite), the size and number of beds (*e.g.*, two queen beds), the type of accessible bathing facility (*e.g.*, roll-in shower), and communications features available in the room (*e.g.*, alarms and visual notification devices). Based on that information, many individuals with disabilities will be comfortable making reservations.

For older hotels with limited accessibility features, information about the hotel should include, at a minimum, information about accessible entrances to the hotel, the path of travel to guest check-in and other essential services, and the accessible route to the accessible room or rooms. In addition to the room information described above, these hotels should provide information about important features that do not comply with the 1991 Standards. For example, if the door to the "accessible" room or bathroom is narrower than required, this information should be included (*e.g.*, door to guest room measures 30 inches clear). This width may not meet current standards but may be adequate for some wheelchair users who use narrower chairs. In many cases, older hotels provide services through alternatives to barrier removal, for example, by providing check-in or concierge services at a different, accessible location. Reservations services for these entities should include this information and provide a way for guests to contact the appropriate hotel employee for additional information. To recognize that the information and level of detail needed will vary based on the nature and age of the facility, § 36.302(e)(2) has been moved to § 36.302(e)(1)(ii) in the final rule and modified to require reservations services to:

Identify and describe accessible features in the hotels and guest rooms offered through its reservations service *in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs.* [Emphasis added]

As commenters representing hotels have described, once reservations are made, some hotels may wish to contact the guest to offer additional information and services. Or, many individuals with disabilities may wish to contact the hotel or reservations service for more detailed information. At that point, trained staff (including staff located on-site at the hotel and staff located off-site at a reservations center) should be available to provide additional information such as the specific layout of the room and bathroom, shower design, grab-bar locations, and other amenities available (*e.g.*, bathtub bench).

In the NPRM, the Department sought guidance concerning whether this requirement should be applied to third-party reservations services. Comments made by or on behalf of hotels, resort managers, and other members of the lodging and resort industry pointed out that, in most cases, these third parties do not have direct access to this information and must obtain it from the hotel or other place of lodging. Because third-party reservations services must rely on the place of lodging to provide the requisite information and to ensure that it is accurate and timely, the Department has declined to extend this requirement directly to third-party reservations services.

*Hold and release of accessible guest rooms.* The Department has addressed the hold and release of accessible guest rooms in settlement agreements and recognizes that current practices vary widely. The Department is concerned about current practices by which accessible guest rooms are released to the general public even though the hotel is not sold out. In such instances,