**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **JEFFREY JOEL JUDY,** : | |
| : | |
| **Plaintiff,** : | |
| : | Case No. 2:08-CV-859 |
| : | |
| : | **JUDGE ALGENON L. MARBLEY** |
| **GIUSEPPE A PINGUE** : | Magistrate Judge Abel |
| : | |
| **Defendant.** : | |
| : | |

**OPINION AND ORDER**

**I. INTRODUCTION**

This matter comes before the Court on the Defendant, Giuseppe A. Pingue's ("Pingue"), Motion to Dismiss the Plaintiff, Jeffrey Joel Judy's ("Judy"), Complaint for lack of Article III standing (Dkt. 29). For the reasons stated below, Pingue's Motion to Dismiss is **GRANTED**.

**II. BACKGROUND**

This case is an action for declaratory and injunctive relief under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.* The specific claims in this case arise from Judy's alleged visits to a property owned by Pingue during trips Judy took to Columbus, Ohio in 2007 and 2008. Judy claims that when he visited Pingue's property on Worthington Galena Road on both occasions, he encountered architectural barriers that prevented or impaired his access to shops located on the property in violation of Title III of the ADA.

**III. STANDARD OF REVIEW**

Pingue's Motion to Dismiss was filed pursuant to Fed. R. Civ. P. 12(b)(1). The Sixth Circuit recognizes two kinds of motions to dismiss for lack of standing pursuant to Rule

12(b)(1): a facial attack and a factual attack. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A *facial* attack merely questions the sufficiency of the pleading. *See id.* In deciding a facial motion to dismiss, "the court must take the material allegations in the petition as true and construed in the light most favorable to the nonmoving party." *Id.* A *factual* attack, on the other hand, is an attack on the factual existence of standing. *See id.* In deciding a factual motion to dismiss, "the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* In either case, "the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir. 1986). Ping presents a factual attack in this case.

## IV. LAW AND ANALYSIS

Pingue's Motion to Dismiss challenges Judy's standing to bring his ADA Title III Complaint. As an Article III court, this Court only has the power to resolve actual cases and controversies. U.S. Const. art. III, §2; *Sprint Commc'ns Co., L.P. v. APPCC Servs., Inc.*, 128 S.Ct. 2531, 2535 (2008). The case or controversy requirement is only satisfied if the Court can satisfy itself that the plaintiff has standing. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006). Standing is evaluated based on the facts as they existed at the time the complaint was filed. *Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513, 524 (6th Cir. 2001).

The party seeking federal court action has the burden of establishing standing. *Rosen v. Tenn. Comm'r of Fin. & Admin.*, 288 F.3d 918, 927 (6th Cir. 2002). This burden increases as the litigation proceeds. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (standing elements must be proven "with the manner and degree of evidence required at the successive stages of litigation"). As Pingue makes a factual attack upon Judy's allegations of subject-matter

jurisdiction, generalized allegations of standing will not suffice. *Ctr. For Biological Diversity v. Lueckel*, 417 F.3d 532, 537 (6th Cir. 2005). Instead, Judy must "'set forth specific facts,' in affidavits or through other evidence, demonstrating that each element of standing is satisfied." *Id.* (quoting Fed.R.Civ.P. 56).

To satisfy the constitutional standing requirements a plaintiff must show that: "(1) [he] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged act of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180–81 (2000). Where, as in this case, a plaintiff seeks injunctive relief, he must demonstrate that there is a non-speculative, imminent threat of repeated injury to establish that there is an injury in fact. *City of Los Angeles v. Lyons,* 461 U.S. 95, 111 (1983); *Fieger v. Michigan Supreme Court*, 553 F.3d 955, 966 (6th Cir. 2009). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974). "'Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to merely conjectural or hypothetical—threat of future injury.'" *Church v. City of Huntsville*, 30 F.3d 1332 (11th Cir. 1994); *accord Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) ("A threatened injury must be certainly impending to constitute injury in fact" (internal quotation marks omitted)).

### A. ADA TITLE III STANDING

In the ADA context, a plaintiff must establish a likelihood of returning to the defendant's business to demonstrate a real threat of future harm.  *See, e.g., Steger v. Franco, Inc.*, 228 F.3d 889, 893 (8th Cir. 2000); *Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1137-38 (9th Cir. 2002);  *Molski v. Arby's Huntington Beach*, 359 F. Supp. 2d 938, 946 (C.D. Cal. 2005)*;  Parr v. L & L Drive-Inn Rest.*, 96 F. Supp. 2d 1065, 1079–80 (D. Haw. 2000) (plaintiff must demonstrate a sincere intent to return); *Davis v. Flexman*, 109 F. Supp. 2d 776, 784 (S.D. Ohio 1999) (patient lacked standing to seek injunctive relief under ADA where there was no evidence that she intended to return to the clinic).  To determine whether an ADA plaintiffs' likelihood of returning to defendant's facility is sufficient to confer standing, courts have considered: "(1) the proximity of defendant's business to plaintiff's residence, (2) the plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4) the plaintiff's frequency of travel near defendant."  *D'lil v. Stardust Vacation Club*, No. 2:00-CV-01496, 2001 WL 1825832, at *3 (E.D.Cal. Dec. 21, 2001); *Vaughn v. Rent-a-Center*, No. 2:06-CV-1207, 2009 WL 723166 (S.D. Ohio March 16, 2009).

## B. PINGUE'S FACTUAL ATTACK ON JUDY'S STANDING

The crux of Pingue's motion is that Judy does not have standing in light of the factors for determining whether Judy has shown a likelihood of returning to Pingue's property.

### 1. Standing as a Jurisdictional Issue

As a threshold matter, Judy maintains that this Court cannot decide a factual attack on standing premised on the issue of whether Judy is likely to return to Pingue's property.  Judy argues that the jurisdictional issue of his likelihood of returning is also an essential element of

4

his cause of action. He contends that this relationship makes the facts relating to the standing issue so intertwined with the merits that this Court's fact-finding would be impermissible in light of the United States Supreme Court's decision in *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006).

In *Arbaugh*, the Supreme Court considered whether the employee-numerosity requirement for employment discrimination actions under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(e), is a requirement for federal court jurisdiction or is merely a "substantive ingredient of a Title VII claim for relief." *Arbaugh*, 546 U.S. at 503. *Arbaugh* involved a situation where the defendant-employer did not raise the employee-numerosity issue until two weeks after the trial court entered judgement on the merits for the plaintiff. *Id.* Citing the "unfairness" and the "waste of judicial resources" that would result from reading the requirement as jurisdictional, the Court held that employee numerosity is a substantive, not a jurisdictional, requirement for a Title VII employment discrimination claim. *Id.* at 515. Stating its rule more broadly, the Court held that "when Congress does not rank a *statutory limitation* on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Id.* at 516 (emphasis added).

The *Arbaugh* rule is not applicable to Pingue's attack on Judy's standing. Standing is not a statutory limitation on the scope of the ADA; it is a constitutional limitation on the power of a court. U.S. Const. art. III, §2; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 ("[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III."). Unlike in *Arbaugh* and the cases cited in Judy's brief, the case at bar does not involve a question of whether a statute vests jurisdiction in the district court, but whether the action itself is a case or

controversy within the meaning of Article III. *Cf Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 483–86 (determining that the actual breach of a collective bargaining agreement is not a jurisdictional prerequisite for a suit under the Labor Management Relations Act).

## 2. Judy's Standing in This Case

In determining whether Judy has standing to bring this suit, the first factor for the Court to consider is whether the proximity of Pingue's business to Judy's residence makes it likely that Judy will return to Pingue's business. *Vaughn*, at *6. It is undisputed that Pingue's business is located in Columbus, Ohio and that Judy is a Florida resident. The plaintiff's distance from the defendant's place of business becomes especially significant when it is more than 100 miles. *See Molski v. Mandarin Touch Restaurant*, 385 F. Supp. 2d 1042, 1045 (D. Cal. 2005) ("[C]ourts have consistently held that it weighs against finding a reasonable likelihood of future harm" when the distance is more than 100 miles). In this case, Judy's residence is more than 800 miles from Pingue's place of business. The Court finds that distance makes it unlikely that Judy will return to Pingue's business.

The second factor is whether Judy's past patronage of Pingue's business makes it likely that he will return. *Vaughn*, at *7. Judy testified by affidavit that he visited the property in 2007 and 2008, patronizing a Donatos Pizza restaurant during the 2008 visit. (Dkt 36-2). Judy attached a receipt from the 2008 visit to Donatos. *Id.* That receipt, however, is from a Donatos restaurant at 5288 North High Street, which is not part of Pingue's property. Judy relied on his past patronage of Donatos restaurants in his opposition to Pingue's Motion to Dismiss. (Dkt. 36, at 6). Judy also claimed to have entered a nail salon during his visits to the property, but the only nail salon on the property has been closed since the year before Judy claims to have first visited

the property. (Dkt. 30, Exhibit D, Affidavit of Guiseppe A. Pingue). From Judy's own submissions, the Court finds no indication of Judy's past patronage of businesses on Pingue's property that would raise a reasonable likelihood that Judy is likely to return.

The third factor is the definitiveness of Judy's plans to return. *Vaughn*, at *7. Judy need not express a concrete plan to return to Pingue's establishment, but he must "assert[] some credible reason for his desire to return to the property in question." *Id.* Judy has stated that he prefers Donatos pizza, enjoys shopping in Worthington, and has friends in the area. (Dkt. 36, 6). He cites to *Access 4 All, Inc. v. Trump International Hotel*, 458 F. Supp. 2d 160 (S.D.N.Y. 2006) as analogous. In that case, the district court found that a plaintiff who lived more than 1000 miles from the defendant's property showed a plausible intention to return where he demonstrated a desire to return to the Jean Georges restaurant. *Access 4 All*, at 169–70. The Court does not find that case even roughly analogous for two reasons. First, as discussed in the previous paragraph, Judy's submissions raise a significant doubt as to whether he has even in fact patronized the Donatos restaurant at Pingue's property. Second, Jean Georges at Trump Tower is a unique restaurant; a person who desires to go to Jean Georges necessarily desires to go to Trump Tower. Donatos Pizza is a chain restaurant; a desire to go to Donatos can be fulfilled at any number of locations. The Court finds that Judy's expressed desires—to eat at Donatos, to shop in Worthington, and to visit friends—do not evidence a credible desire to return to Pingue's property.

The final factor is whether the frequency of Judy's visits to Pingue's property indicates that is it likely that Judy will return. Judy testified by affidavit that he visited the property in 2007 and 2008. (Dkt 36-2). If the Court accepted only that testimony, that would establish a

frequency of once per year. On the other hand, Judy answered an interrogatory asking him to list the times that he visited the property in the previous five years by listing only the 2007 and 2008 visits. (Dkt. 30, Exhibit C). That answer shows that the once-a-year frequency might be misleading. As a result, the Court finds that the frequency factor is neutral in this case.

Because the factors in this case weigh against finding that Judy is likely to return to Pingue's property, the Court finds that Judy does not have standing to bring this suit.

### C. "Tester" Standing

Judy also argues that he has standing as an ADA tester. (Dkt 36, at 9). In the ADA context, a tester is a qualified individual with a disability who is testing an entity's compliance with federal disability statutes. *Tandy v. City of Wichita*, 380 F.3d 1277, 1287 (10th Cir. 2004). Tester standing is generally available where the tester-plaintiff meets the Article III standing requirements. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 374-75 (1982). Both Judy and Pingue ask the Court to follow *Tandy v. City of Wichita*, in which the 10th Circuit recognized tester standing for a plaintiff under Title II of the ADA. *Tandy*, 380 F.3d at 1287. Without expressing any opinion on the question of whether tester standing exists under Title III of the ADA, the Court finds that Judy does not meet the requirements for tester standing.

In *Tandy*, the Tenth Circuit found that the plaintiff had tester standing to seek prospective relief because "he [was] under a real an immediate threat of experiencing" the prohibited discrimination. *Id.* That was simply an application of the standing requirements applicable in all cases. *Id.* (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). As discussed above, Judy has failed to establish that he has standing under those requirements. Any tester status that Judy might possess does not confer standing to seek prospective relief where he cannot show a

8

reasonable likelihood of returning to Pingue's property.  *See, e.g., Steger v. Franco, Inc.*, 228 F.3d 889, 893 (8th Cir. 2000); *Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1137–38 (9th Cir. 2002);  *Molski v. Arby's Huntington Beach*, 359 F. Supp. 2d 938, 946 (C.D. Cal. 2005)*;  Parr v. L & L Drive-Inn Rest.*, 96 F. Supp. 2d 1065, 1079-80 (D. Haw. 2000) (plaintiff must demonstrate a sincere intent to return); *Davis v. Flexman*, 109 F. Supp. 2d 776, 784 (S.D. Ohio 1999) (patient lacked standing to seek injunctive relief under ADA where there was no evidence that she intended to return to the clinic).

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Pingue's Motion to Dismiss. This case is **DISMISSED**.[1]

**IT IS SO ORDERED.**

                                             **/s Algenon L. Marbley**
                                             **ALGENON L. MARBLEY**
                                             **UNITED STATES DISTRICT JUDGE**
**Dated: November 25, 2009**

---

[1] In his Motion to Dismiss, Pingue also requested that all costs, including attorney fees, be assessed against Judy. Since Pingue identified no grounds for this Court to shift costs to Judy and the Court is not aware of any grounds for shifting costs, this Court **DENIES** Pingue's request for costs to be assessed against Judy.